# First National Bank of Warren, Plff. in Err., *v.* J. A. Cadwallader.

The only duty of the maker of a draft which is cashed by a bank is to see that the draft is paid.

A recommendation by the maker as to the agent to be employed to make the collection, resulting in the loss of the proceeds after collection, by the agent's insolvency, does not render the maker liable for the loss.

(Argued May 1, 1888. Decided May 25, 1888.)

January Term, 1888, No. 103, E. D., before GORDON, Ch. J. PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Warren County to review a judgment on a verdict for the defendant in an action of assumpsit. Affirmed.

At the trial before BROWN, P. J., the following facts appeared:

On April 5, 1882, the defendant, J. A. Cadwallader, took to the plaintiff, the First National Bank of Warren, a draft made by him upon W. H. Johnson, of Buffalo, N. Y., for $5,600, which the plaintiff cashed, and sent to the First National Bank

NOTE.—The acceptor of a bill being the principal debtor, while the drawer and indorser are but sureties, payment by the former extinguishes the debt, leaving no right of action against the latter, except when the acceptance was supra protest. Swope v. Ross, 40 Pa. 186, 80 Am. Dec. 567. When a check or draft is given for collection to a bank, it is bound either to return the same or the money. Fifth Nat. Bank v. Ashworth, 123 Pa. 212, 2 L. R. A. 491, 16 Atl. 596; Pepperday v. Citizens Nat. Bank, 183 Pa. 519, 39 L. R. A. 529, 63 Am. St. Rep. 769, 38 Atl. 1030.

of Buffalo for collection. Mr. Johnson paid the draft on presentation and the Buffalo bank sent, in settlement, its check on the Fourth National Bank of New York to the plaintiff bank. Upon presentation in New York the check was unpaid for want of funds of the Buffalo bank to meet it and was therefore protested. The Buffalo bank having failed, this action was brought by the Warren bank against Cadwallader for the amount of the draft, interest, etc. When the draft was cashed by the plaintiff bank its cashier, Mr. Beecher, had some conversation with Mr. Cadwallader in regard to the collection of the draft. Mr. Beecher suggested sending it to his correspondent in Buffalo. Mr. Cadwallader suggested the First National Bank of Buffalo. Mr. Beecher objected that there would be a charge made for collection if sent to the Buffalo bank as suggested by Mr. Cadwallader. There was some further conversation about the First National Bank of Buffalo, the cost of collection, Mr. Johnson, etc., in the course of which Mr. Cadwallader said it would be all right, but the meaning of his expression was disputed.

The plaintiff submitted the following points:

1. When a draft is deposited with a bank for collection, which is payable at another place, the duty of the bank so receiving a draft is to seasonably transmit the same to a suitable bank at the place of payment, which bank at the place of payment becomes the agent of the depositor, for whose acts and omissions the depositor is responsible.

2. If the jury believe from the evidence that Mr. Beecher, acting for the plaintiff bank, was induced by Cadwallader to send the draft on W. H. Johnson to the First National Bank of Buffalo for collection, the said First National Bank of Buffalo was thus made and became the agent of the defendant, Cadwallader, for the collection and transmission of the money to the plaintiff bank, and for any default in the discharge of its duty as such the defendant, Cadwallader, would be liable.

3. If the jury believe from the evidence that the First National Bank of Buffalo received the said draft on W. H. Johnson on the morning of April 6, 1882, and on that day drew a draft on the Fourth National Bank of New York, in favor of Mr. Beecher, cashier, but instead of remitting it to him, canceled it, and did not draw and mail him another until late on April 7.

which latter draft did not reach New York, for presentation in the due course of business, until the 12th and was then dishonored, the First National Bank of Buffalo was guilty of negligence or default of duty as a collecting agent.

*Ans.* We answer the first, second, and third points by saying that whether they are correct in the abstract or not, they are not made applicable to the case on trial by any evidence in the case. [1, 2, 3]

4. If the jury believe that Mr. Beecher was induced to change his correspondent in Buffalo and send the said draft on W. H. Johnson to the First National Bank of Buffalo for collection, upon Cadwallader's "guaranty that it would be all right," and that the loss that occurred was occasioned by the default or negligence of said First National Bank of Buffalo, the defendant would be liable therefor.

*Ans.* We decline to affirm the plaintiff's fourth point as the same is written, but we say that if the jury are satisfied from the evidence that an agreement was made between Mr. Beecher, acting on behalf of the plaintiff, and Mr. Cadwallader, by which Mr. Cadwallader, in consideration that Mr. Beecher would send the draft to the First National Bank of Buffalo for collection, agreed to guarantee that the First National Bank would pay over the money collected thereon to the First National Bank of Warren, then the verdict should be in favor of the plaintiff for so much of the draft as remains unpaid. I think from the answer to this point, you will clearly gather the question of fact that is for your determination. [4]

The defendant submitted, *inter alia,* the following points:

1. The draft of April 5, 1882, in evidence, when signed by the defendant, made payable to the order of plaintiff's cashier, and directed to W. H. Johnson, First National Bank of Buffalo, and delivered to the plaintiff, for a consideration of $5,600, paid to the defendant, was a completed contract in writing, upon which defendant's liability was, that if the draft was duly presented for payment to W. H. Johnson at the place where payable, and Johnson should fail to pay it, the defendant would pay the amount of it upon receiving notice in due time of such nonpayment. When Johnson paid the draft Cadwallader's liability thereon ceased.

*Ans.* We affirm this point, and say that if there was nothing

else in the case, that when Johnson paid the draft, Cadwallader's liability thereon ceased.   [5]

5. To entitle the plaintiff to recover, it must prove that defendant, at the time plaintiff cashed the draft for $5,600, drawn by defendant on W. H. Johnson, guaranteed, for a sufficient consideration, that the First National Bank of Buffalo would faithfully and promptly collect the amount of said draft from said Johnson, and remit the same to the plaintiff, and the evidence to establish such guaranty must be clear, explicit, and certain, leaving no room for mistake or misapprehension.   [6]

*Ans.* The defendant's fifth point is affirmed, with the qualification that the degree of proof required in support of the alleged guaranty is only such as satisfies the jury that the contract of guaranty as alleged was in fact made.

6. Unless the plaintiff has proven a guaranty by defendant in import as complete as described in the foregoing point, and founded upon a good consideration moving to defendant, all the testimony relating to the nonperformance and insolvency of the First National Bank of Buffalo is irrelevant and immaterial, and should not be considered by the jury.

*Ans.* Affirmed.   [7]

7. Under the testimony the First National Bank of Buffalo became, in law, the agent of the plaintiff, and not of the defendant, for collecting and remitting the amount of said draft to the plaintiff.

*Ans.* The defendant's seventh point is a correct statement of the law, and is affirmed, unless you find such a contract of guaranty as I have before stated.   [8]

The court charged the jury, *inter alia,* as follows:

Mr. Cadwallader, went to the First National Bank of Warren and made an arrangement with Mr. Beecher to cash the draft of $5,600 drawn upon Mr. Johnson.   Whether that was for the accommodation of Mr. Cadwallader or not is not, as I look at the case, very material.   Mr. Beecher advanced the money and bought the draft.   [9]

Now, when Mr. Cadwallader guaranteed, in response to the suggestion made by Beecher, that it would be all right, what was it that he agreed would be all right?   Was it that it would cost nothing if it was sent to the First National Bank of Buffalo for collection, or did he mean that it would be all right because

Mr. Johnson would pay it? Or did he mean by that expression that the First National Bank of Buffalo would pay over to the First National Bank of Warren the money that it collected from Mr. Johnson? Here is the whole question in the case, and as you determine it, you will find for the plaintiff or defendant. [10]

Verdict and judgment for defendant; whereupon plaintiff took this writ, assigning as error: (1–8) Answers to plaintiff's and defendant's points; and (9, 10) portions of the charge quoted.

*S. P. Johnson, W. M. Lindsey,* and *Jas. O. Parmlee,* for plaintiff in error.—When a note is deposited with a bank for collection, which is payable at another place, the whole duty of the bank so receiving the note in the first instance is seasonably to transmit the same to a suitable bank or other agent at the place of payment. And if the acceptor of a bill or promisor of a note has his residence in another place, it shall be presumed to have been intended and understood between the depositor for collection and the bank, that it was to be transmitted to the place of the residence of the promisor. Fabens v. Mercantile Bank, 23 Pick. 332, 34 Am. Dec. 59; Dorchester & M. Bank v. New England Bank, 1 Cush. 177; East Haddam Bank v. Scovil, 12 Conn. 303; Bank of Washington v. Triplett, 1 Pet. 25, 7 L. ed. 37.

. . The entire duty of the collecting bank is discharged, when the check or draft is transmitted to a responsible subagent to collect the money. The agent to whom the instrument is sent to make demand for payment then becomes the agent of the depositor or indorser. Merchants' Nat. Bank v. Goodman, 109 Pa. 427, 58 Am. Rep. 728, 2 Atl. 687.

*Roger Sherman* and *Charles Dinsmoor,* for defendants in error.—Upon the facts of the transaction by which defendant sold to plaintiff the draft in question, we have a completed contract in writing, by which defendant undertook that if the draft was duly presented for payment to W. H. Johnson at the place where payable and Johnson should fail to pay it, he, defendant, would pay the amount of it upon receiving notice in due time of such nonpayment. When Johnson paid the draft, defendant's liability thereon ceased. This written contract of defendant, the

plaintiff could not add to or alter by parol testimony of an additional parol agreement, except upon proof of fraud, accident or mistake; and of neither of these was there any allegation in plaintiff's declaration or proof in the testimony. Hill v. Gaw, 4 Pa. 493; Stroop v. Ransom, 10 Watts, 297; Byles Bills, 194. "There was no guaranty proven in terms such as the law requires. Unangst v. Hibler, 26 Pa. 150; Petriken v. Baldy, 7 Watts & S. 430; Russell v. Clark, 7 Cranch, 69, 3 L. ed. 271.

PER CURIAM:

All that Cadwallader had to do with the $5,600 draft after it had passed to the plaintiff was to see that it was honored when due, which, it seems, was done. The paper belonged to the plaintiff as fully as any other chattel that might have been passed to it on a full consideration paid. What then had the defendant to do or to say as to the agent through whom the bank might choose to collect it? He might advise, but he could do nothing more; he might recommend such an agent, but the bank, on the other hand, might adopt such recommendation or not as it saw fit. It follows that the First National Bank of Buffalo was alone responsible to the plaintiff, and the loss resulting from its failure cannot be charged to the defendant.

The judgment is affirmed.